Page 12, 14, 26, Sahar Hussain v. L.A. Fitness International. If both attorneys that are going to present arguments would step up and identify yourselves for the record. My name is Robert Shipley. I represent Fitness International. Shipley? Yes. Good morning. My name is James Rose. I represent L.A. Fitness International. All right. Mr. Roszak and Mr. Shipley, each of you will be given approximately 15 minutes to present oral arguments. And from that, Mr. Shipley, you may save out some time for rebuttal. All right. Thank you very much. All right. You may proceed. I would like to reserve a few minutes for rebuttal. Certainly. Good morning, Your Honors. May it please the Court, Your Honor. I think that the central issue in this case is whether the L.A. Fitness Agreement is ambiguous and confusing in both its language and format and thus violates public policy. I am well aware that this has been an area of law that has been explored at some length both in the Minnesota Courts of Appeals as well as here in Illinois. What I think distinguishes this case from many of those which have been cited below and in the briefs and also before Your Honors is the fact that two things here. One, I don't believe that Mr. Hussain's affidavit was considered by the trial court and I think fundamentally that's an important issue. I understand that the Memorandum of Opinion and Order did reference the affidavit, but upon review of that opinion, you will note that the reference is just kind of in passing and it doesn't address what I think is the substance of the affidavit pertaining to circumstances under which this particular membership agreement was executed. I think when you take the affidavit, the circumstances that are set forth in that affidavit... Well, what does he say? He said he didn't read it, that they didn't explain it to him, and what was the third? And that essentially what his understanding was is that it was... Limited to the... Pertaining to the... Fees? To the fees, exactly. Now, taking the first part of the affidavit, he didn't read it? Was that the first thing? I don't think that he said that... I thought he said he didn't read it. He indicates that he was quickly told that this is in paragraph four of the affidavit, that he was quickly told the agreement pertained to the financial obligations that he would be incurring, and there were no additional explanations of the agreement, nor was he advised that the form considered, also included, and this is in paragraph six of the affidavit, a release or waiver of liability. He was not informed that... No explanation to him that there was, that this particular membership agreement included a release or waiver of liability. And to that point, I think one of the distinguishing characteristics in this case is the L.A. fitness agreement, as I... Well, let me just ask you. Is it enough under Illinois law to say that, you know, it wasn't explained to me to vitiate a contract? Would that be a general principle of Illinois law? No, no, Your Honor. What about Minnesota law? It would not under Minnesota law either, as you have posed the question. So, I mean, if we consider the affidavit, what about it would suggest that this contract could be vitiated? Well, that's where I think you also have to consider, in conjunction with the affidavit, you also have to consider the format of the membership agreement itself. And as I have argued in my brief, consistent with what I had argued in the trial court, this particular membership agreement is confusing and ambiguous in its language and format. Are we limiting ourselves to the fitness service agreement and release of liability, or are we talking about... We would be talking about the original membership agreement. Okay. Which is where in your appendix? Oh, it's on page... A31. A31. A couple of different verses. Yeah. Okay. If I could... I want to address your point, but if I could just comment about... Why, in my view, it is material to the issues to consider both what's labeled as the membership agreement and the fitness service agreement is because even though these are two different forms, as I've argued, I believe that both of them are... I'll point this out in the brief, contain many of the same ambiguities. And so, to the extent that there was an opportunity, if one would argue, for the defect to be cured, if you just accept for the purposes of this discussion the argument that we are asserting, then the fitness service agreement was LA Fitness's second opportunity to cure ambiguities in a substantially similar formatted agreement and they did not do so. The cases that have been cited and both briefs have discussed Schlobohm versus Spa Petit, but I think the distinction in Mr. Hussain's case in the LA Fitness agreement as is the case in all of the cases which have examined formats of these types of agreements and language of these types of agreements, is how are they laid out and whether or not the provisions are clearly identified and whether or not there's an opportunity for the signator to the agreement. Does the membership... I'm looking at it. Does the membership agreement refer to that waiver of liability on the first page or not? It contains in the paragraph, the second paragraph that's above members' right to cancel, there is some language in the third sentence that references the waiver of liability. By signing this agreement, buyer acknowledges that buyers of legal age has received a filled-in and completed copy of the agreement, identifying the membership type and services purchased, has read and understands the entire agreement, including but not limited to the EFTCC request, the release and waiver of liability and indemnity, all other terms and conditions on the reverse side hereof, and the current other agreement. Okay. All right. And then on the reverse side is where we have the important release and waiver of liability and indemnity. That's correct. Well, what about the Minnesota case in the SLOBOM? Was the document, was the waiver of liability on the first page? I don't know that that's specifically described, but I would suggest to you that it was. And as I have read SLOBOM several times and gone over it, I think the following are very important. The signature block, based on the way that the opinion describes the exculpatory language, was immediately below that exculpatory language. The format of the agreement was different, containing separate and easily identifiable headings, as well as a uniform font. And the membership agreement here, the language that Your Honor, correct, the language that Your Honor has referenced is, as I would use the term, very on the front page. And then you have the signature language directly. Well, so one of the factors is whether the font is the same. That renders it ambiguous. I think that's one of the points that you should consider, that the format, as well as the language, is confusing and ambiguous. You have the member's right to cancel on the LA Fitness. Well, the language itself, you wouldn't argue, is ambiguous, would you? The waiver of liability? I mean, this is basically the same language that was in the Minnesota case. It's very, very similar. I would agree with that. However, it does have some language that includes LA Fitness negligence, excuse me, whether caused by the negligence of member or otherwise. And I have questioned in the brief, and would reiterate that here, what is meant by otherwise, whether that refers to a member's negligence, LA Fitness's negligence, or some undefined third party or other circumstance. Well, what about the fact that it's in a box? It's in a larger font than everything else on the page. And it's in bold. And it starts out with the word important. Doesn't that kind of focus you on this box? I agree, Your Honor, it would focus you if one were to examine the entire document. But this is on the reverse side of the document. And I think under the circumstances of how this agreement is set forth, especially where the signature line is directly under member's right to cancel, which is in a bolder font, which is certainly highlighted, and references the compensation that's going to be paid to the club, you know, that leads the reasonable person to conclude that this is why they are signing that particular document. I think unlike, I apologize. In Anderson v. McOsker, which is another Minnesota case that was cited in support of this agreement, I would distinguish it because, for example, there were separately identified paragraphs. The member in that case initialed each of those paragraphs. There was a line or a box where the member could initial each of those paragraphs to signify that those had been read and then presumably understood. So is your position that in order for these provisions to be valid, the waiver of liability has to be on the same page as the signature, or in the alternative, the initial file of the person who's going to be charged with that knowledge of that waiver? Yes. Can I just address this? My argument is, to your point, that the waiver language, the exculpatory language, must be identified within the body of the agreement in a manner that will draw attention to the prospective member so that they are understanding that in addition to the other provisions that they might be requested to sign off on, it would also include that particular language. And it's really for that reason that I also did cite those medical malpractice cases, the Schrader versus Northwest Community Hospital and Spiegelman versus Victory Memorial Hospital, because I recognize those cases dealt with medical consent, informed consent issues. However, I think that the basic principle in those cases is equally applicable here in terms of how those consents are laid out and how the ultimate signer, in those cases the patient, is confused. So... Do you think that the choice of law was appropriately addressed by the court here? In... In applying Minnesota law. You're not contesting that the choice of law was... No, no, I am not. What do you think the... So you're not... We're looking at the Minnesota public policy? We are, and as I would read Illinois law, and as I had discussed in my brief, I do believe that Illinois law and Minnesota law are consistent on these points in terms of the public policy issues. And what is the public policy generally? That we do... The public policy in favor of enforcing contracts that the parties have agreed to? These types of contracts are enforceable. Well... However... The freedom to contract is the general public policy. Yes. Exculpatory clauses are permissible. However, they are not favored, but they are... And they have to be strictly construed against the drafter. That is correct. Do you think that these Minnesota cases really suggest that this particular provision is ambiguous? I would suggest the answer would be yes. Okay. And again, what... Because it's... Because a contract which is deemed to be ambiguous is a contract that could be deemed or is deemed that can be interpreted in more than one way. Alright. Both in language... But in terms of the complaint and this clause, how would you interpret it some other way? Do we have to look at the complaint and then this clause, the waiver... The release and waiver of liability? Correct. How is it ambiguous vis-a-vis your complaint? It's ambiguous because the format of this particular membership agreement leads one to conclude that they are executing a document that pertains to their financial obligations and not for any other reason. No, but I'm talking about the actual waiver of liability clause as opposed to these other things that are in this contract. I apologize, Judge. I misunderstood that. As I mentioned a moment ago, I think that the release language, which includes in part the following, whether caused by the negligence of a member or otherwise, is vague and ambiguous because the term otherwise or what is that meant to reference to? And then also... But then are we talking about... Don't we have to look at the language about the negligence that's being exculpated here? It's, you know, member... Let's see. Member also agrees to indemnify L.A. Fitness for any loss, liability, damage or cost L.A. Fitness may incur due to the presence of a member in or about the L.A. Fitness premises or in any way observing or using any facilities or equipment of L.A. Fitness, whether caused by negligence of a member or otherwise. And then it says... Or maybe it was before that. Oh, previous to that. Member agrees to the following. Member holds releases in L.A. Fitness and forever gives up any claim or demand on account of injury to member's person, including injury leading to death permitted by law, I'm sorry, whether caused by the active or passive negligence of L.A. Fitness or otherwise to the full extent for equipment. Wait. To the fullest extent permitted by law. I mean, there's clauses similar to that in other cases here in Minnesota and in Illinois that don't really say that this language is ambiguous. Well, from my read, I think if they would have not included that term or otherwise, then it would be more direct and straightforward. And I also believe that the entire box here has to be read. And in some respects, I think you can interpret this particular exculpatory language as being defined by the second part of this release, which pertains to the member's health and certification that they've consulted with a physician, et cetera. Isn't this language similar to the language that was used in Le Bon? It is similar. And that's the other reason why I go back to the formatting. I don't go back. The format, I think, is important. Anything further that you want to add at this time? No, thank you very much for your time. All right. Mr. Rosiak? Yes, Your Honor. It pleases the Court, my name is James Rosiak and I represent LA Fitness International in this matter. And I'd like to address some of counsel's comments specifically as to the affidavit at first. The brief says that the judge did not consider the affidavit. And obviously we know that that is not true. The Court specifically, footnote 3 on page 1, indicates and references that very same affidavit and it was considered, it was part of the briefing package. The problem is it doesn't change anything. If we're going to talk about ambiguity in this case, there is no part of this affidavit that indicates that the plaintiff in this matter did not read, did not understand the limitation of liability in the exculpatory clause. And the fact of the matter is, as Your Honor pointed out, under Illinois and Minnesota law, it wouldn't matter if they didn't read it, then the failure to read and the failure to understand are not reasons to find ambiguity or that the exculpatory clause is against public policy. Is it your understanding that he suggests that he didn't read this? My understanding is he says in number 6 of his affidavit that no one explained it to him. He never says that he didn't read it or he didn't see it. Which I think is a very important distinction. The reason the Court considered this affidavit and didn't need to cite it other than once in a footnote is it really doesn't change anything. It doesn't make this language ambiguous. He hasn't said he didn't understand anything. Then where are we on this? Even if we look at objectively speaking under the case law, so many other upheld exculpatory clauses use the exact same language in Minnesota that again, there is no ambiguity. There is no problem with the scope. And there is no allegation in this case that it's against public policy. And what does that lead us to? We have a valid exculpatory clause in this matter. Let me ask you a question. This phrase in the release itself it says whether this injury is caused by the active or passive negligence of LA Fitness or otherwise. Couldn't it be argued that otherwise include that you're attempting to escapade them from intentional misconduct or reckless conduct which would be against public policy? Because otherwise means negligence or passive or otherwise means everything else. An excellent question and one I prepared for. It is an excellent question, Judge. Otherwise reads as to the fullest extent of the law. It doesn't just stop at otherwise. And I would suggest this one. Sometimes when I look at contract language I like to think about how I would argue it from the other side. Say, for instance, that willful wanton intentional conduct was not illegal to contract or waive in a case. If I was trying to do this with the same agreement I was trying to say, plaintiff, no. You, we are insulated. You have waived liability for intentional, willful and wanton behavior. Look at this because it says the word otherwise. Is there a court in this land that would grant that and say that we've done that by the use of the word otherwise? I don't think that they would. In the case that I would point to you for the use of the word otherwise, Minnesota law is Malika v. St. Croix Valley Skydiving Club. They use the words negligence implied or otherwise. And specifically the court noted that the waiver is strictly for negligence and in Shunem Bloom for negligence only. So the otherwise could be relating to the passive or active negligence or some other, I don't know. Lawyers are crafty people, Judge. They can come up with all kinds of negligence. I've seen it in my career. I'm sure you have too. So active passage or any other negligence that you could possibly think of. The otherwise does not take this beyond the scope to make this an exculpatory clause that is illegal or shouldn't be complied with. And I think the other thing we need to think about when we're looking at that otherwise language is what are we trying to do in this case? We only have one count complaints or negligence. This contract is being used just for the exculpatory clause against negligence. So we're not trying to do anything other than that. And again, I would also ask you to think about the reverse argument on that. Could this ever possibly be used and upheld as waiving anything other than just negligence? And I think the answer has to be no. I just don't think there was any time that you have no evidence before you and the court did not either at the trial level that the plaintiff was ever confused or misled by the term otherwise. And in this case we're not trying to change do anything other than to insulate ourselves from liability for negligence as it clearly states. And I would just point out as a side note too is that Illinois law, our Illinois Supreme Court has also considered the use of the word otherwise in the Schlesman v. Max Henderson case 83 and the term used there was negligence or otherwise. And that was upheld. Specifically the court said nor do we find that the release was signed by the plaintiff when the parties were operating under a mutual mistake. In fact, the release in question was designed to encompass all claims against the defendant based on negligence even though the precise cause of the accident may have been extraordinary. In that case, much more extraordinary than this case. I think the foreseeability of injuring oneself during the course of a exercise routine is much more plain than most of the cases that we see the same sort of exculpatory clause upheld. I don't believe that the plaintiff in this case has shown the court either through case law or anything else that the contract itself is confusing in the way it's set up. He addressed the issue of bonds and I would point out too, one of the things I heard when I was sitting down is does the contract reference the exculpatory clause on the second page? It mentions it twice. Right up at the top it says as well under name. It is agreed by and between LA Fitness International and you, the undersigned buyer that you are purchasing a membership from LA Fitness according to the terms on both pages of this membership agreement. That's at the top and then we have another section in the middle by signing this agreement and this is the one that Your Honor mentioned to opposing counsel. And then that refers you to the second page which has the very large block and the very dark letters and the word important as Your Honor pointed out as well. So it's mentioned twice on the other page and then it's certainly highlighted on the second page. And I think the trial court had it right and I really like the quote from the trial court in the Lawrence Mills case that we see little merit in the argument referring to the not being able to refer to the other side at the same time as you look at the front. On the face of the order form directly above the signature of the defendant's representative appears a statement that the order is subject to the including arbitration in that matter. Certainly with that warning on the face of the instrument it was incumbent upon the buyer to read the terms of the agreement under which the goods were purchased. And that's the Lawrence Mills case, Minnesota Supreme Court case, Judge. And I think that that same logic is here. We live in a society where lawyers require us to put so many things in a contract to make them valid and at the same time then we're attacked for putting too much because it can't be put on one page in large font. I think we're stuck between a rock and a hard place. We try to include the language that has time tested by the courts and we try to make it as clear as possible. Again, in this case there's no evidence before the court that there was any confusion on the part of the plaintiff. That's the thing that he is missing in his affidavit. He just doesn't say it. It's not helpful and that's probably why the court didn't talk about it a lot in coming to their holding in this case. Well, so the affidavit doesn't really raise any question about whether the document itself was ambiguous. Well, it certainly doesn't point to anything that he was confused about. He wasn't certainly misled in any way. And the fact that it contains important payment terms, well that's something too that people are concerned about. They didn't show me the payment information. There's not a contract that has just one clause. You have to address the whole bargain in one agreement. Otherwise, then we're again fighting the fact that you've separated things out. Now that creates confusion. So I think it's kind of a damned if we're do, damned if we're don't kind of situation and in this case I think what was done was the best thing that could be done under the circumstances and we have no information in the trial court did not either before us that there was any confusion created on this and there is no case law that supports the issue of the second page. The fact that the signature comes in the middle of the second page, I haven't seen a single case that holds that signature block has to be in a certain location. There's other cases that the trial court cited which I've gone and looked at. Some of them are rather old and they're time tested that the signature block location is not controlling. It's just not controlling. It is incumbent upon anyone who enters into a contract to read the terms and to understand the terms and be comfortable with the terms. That's the beauty of our freedom to contract in this country and it needs to be protected. We know that joining a gym membership is not a necessity or a luxury or any of those things that we need to protect the public from. It's something that could benefit somebody but it's also an activity that can be taken on in any other way. Maybe not running outside on a day like today but there are other things that can be done. If you want to engage in this activity and you want to come on this premises you need to be aware of what you're entering into. When we go to a real estate closing and we're buying a house we're going to change the interest rate and everybody who goes has to initial everything that's important. Here, there's no provision for that. We didn't even see this. We didn't know that this was important. It's just a form and I'm just paying and that's what I'm signing up for. Isn't that a problem here that it was not pointed out? I don't see that. Particularly since it's on the second page. Well, I think since the case law says that if you don't read it you're responsible for it. In this case, there's no indication that he read it or that he didn't read it. I've never seen any requirement in the law that there needs to be a check in a box. It's a two-page agreement. Last time I came home from my closing I was carrying a Redwell full of documents that went through. And maybe those important terms and when you're talking legal size and you've got multiple forms and you need to make sure and they're insulating themselves too probably from similar types of things. We're talking a two-page agreement referenced twice on the first page and right there, huge, on the second page. I'm not willing to go down that road that we need to take a crayon to every single provision and put a stamp on it or put a check on it. I think we're all adults in this society and we have to take responsibility to this level which is so minor compared to the amount of paperwork that's at a closing, I think an important difference. Anything further? Just briefly in closing, I think I've touched on that. This piece is about protecting the interests of the public and the freedom to contract. Freedom to contract is a personal freedom and as children we're protected and we're cared for and we wait for our time to become adults so we can control our lives and think for ourselves. Each adult citizen has a right to make choices that are in their own economic and personal interests. As an adult, I look this up, we have about 1,000 waking minutes per day and it's estimated that we make an average of 5 decisions resulting in choices every minute that results in about 5,000 decisions with choices that occur in a single day. This case doesn't really necessarily turn on choices so much as it does is that we have this public policy like you said about the freedom to enter into contracts but exculpatory clauses, we've passed that, the public policy also is that exculpatory clauses are not favored and that they are strictly construed against the drafter so really at the end of the day we're just trying to decide here whether this is ambiguous or not. It's not about choices, it's about is this an exculpatory clause that's not ambiguous. If we look at that, we haven't seen that it's the same language as upheld and there's an unpublished case in Minnesota that does a nationwide legal analysis of all cases and they use this word otherwise but the otherwise I think we've presented enough that Malika and Schlesman both use the same word otherwise and it really doesn't create any ambiguity. And you pointed out the Illinois Supreme Court case, Schlesman. Right, and it's not beyond the scope and it's not against public policy and we ask your honors to uphold the trial court and affirm their findings and I appreciate your time here today, thank you so much. Alright, Mr. Shipley, a brief response. Thank you, Your Honor. Briefly, I think the argument from counsel touched on the second prong of what my position is. It was both the language and the format of the agreement must be taken into consideration because, for example, in Malaka you had a clarity of language and formatting that I don't think was present here. The opinion in Malaka notes that the words permanent waiver appear in capital letters at the bottom of the printed page following the signature line so there's an emphasis with respect to the exculpatory language in relation to where the individual's asked to sign and then in Lorne Mills although it's not an exculpatory language case, the trial court did cite it and what's important about the language in Lorne Mills is that there was some dispute regarding arbitration clause that had been set forth on the reverse side of the agreement and the opinion notes that it was directly above the signature of the buyer on the written order under which these goods were sold were terms that related to the terms and conditions on the face and reverse side thereof including arbitration. So my point is just simply that when you're asked to sign a document then your attention is directed to that particular area and you have to take into consideration the day-to-day activities we as human beings and the circumstances under which these are signed. Council makes an interesting point and that is that all this litigation puts the attorney-drafters between a rock and a hard place because there's only so many things you can put directly above the signature plaque and they're afraid that they'll find themselves in a situation in another lawsuit where they're litigating over a member's right to cancel and if they didn't put the member's right to cancel immediately above the signature plaque an enterprising attorney would be arguing that this is ambiguous because you put the waiver of liability above the signature plaque and you didn't put the member's right to cancel above the signature plaque. There's only so many signature plaques. Agreed. How would you respond to that? I would respond to it that it's not difficult to reformat this agreement so that you could have the agreement that had the important clauses regarding payment and the occupational liability to be set forth in a typeset which is prominent that would identify a location for at least a signature or initials and a date signed and then you could make reference in yet another paragraph if you thought it was important on the reverse. But what's the real key to these agreements? One, the club wants to get paid and two, they don't want to get sued. It doesn't take too much to reformat this agreement to put both of those clauses prominently on the front of the agreement. Well, but the real issue is the clause itself ambiguous and the cases that we have to look to basically say that this type of language isn't ambiguous. You basically say it is but you don't have a case that says this kind of language in the actual block that this is ambiguous. That would be correct Your Honor, but what I'm relying upon is I did comment below and in this court about the or otherwise which I think does cause some of the exculpatory language which references the fact that you've consulted with a doctor and that you're healthy enough to participate in physical activities must be read in context with the entire exculpatory. Well how does that make it ambiguous? Well, I mean because arguably then that language would relate to, the exculpatory language would relate to a waiver of a physician as opposed to dealing with the first half, if you will, of that agreement. But again, both of these the cases that have upheld these types of agreements have found not only clarity of language but have, and I wouldn't call it dicta, but have held also and have discussed within the body of the opinion that the formatting is very clear. I appreciate your time. Thank you. The case was well argued and well briefed and we will take it under advisement. The court is now in recess.